**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KENNETH L. RUFF** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 14-4704** |
| **TEMPLE UNIVERSITY** | : | |

**MEMORANDUM**

**KEARNEY, J.** **August 14, 2015**

A university employer may not fail to promote a qualified African-American employee based on reasons appearing to be pretext for race-based discrimination. Where two university officials hire the employee as an academic advisor and then, a little over two years later, the same two officials promote other persons for restructured jobs in the same department based on a variety of documented employer-based qualitative judgments creating legitimate reasons for not then promoting the employee, the employee must demonstrate such weakness, implausibility, inconsistency, incoherency, or contradiction in the employer's proffered legitimate reasons to allow a reasonable factfinder to discredit the employer's reasons and possibly find, after trial, the employer's actions motivated by race-based discrimination. We do not decide whether the university made the best choice in employee promotion, only whether the aggrieved employee adduced evidence allowing a jury to find the university's grounds are pretext for race discrimination. Here, after extensive discovery, the employee cites no objective evidence allowing the jury to find the decision of two university officials who hired him in 2008 and then decided to not then promote him to his requested job in 2010 is based on his race. The officials offered him a promotion he did not want based on their qualitative evaluations. There is no objective evidence to find lack of credibility in the several documented legitimate proffered

business reasons for offering promotions to a Caucasian male and Caucasian female, rather than the African-American. We grant the defendant university's motion for summary judgment in the accompanying Order.

## I. Undisputed Facts[1]

In November 2008, Temple University ("Temple") hired African-American Kenneth Ruff ("Ruff") as an academic advisor in the College of Science and Technology ("CST"). Two members of CST's senior staff, Matthew Campbell ("Campbell") and Mia Luehrmann ("Luehrmann") interviewed and decided to hire him.

When first hired in November 2008, Temple placed all academic advisors on the same organizational level. SOF ¶9. Temple provided Ruff with satisfactory employee reviews during his first two years although he admits knowing of negative feedback relating to his advising mistakes. *Id.* ¶4. In Fall 2010, CST decided to restructure its Academic Advising department with different levels of advisors. *Id.* ¶5. The new structure consisted of one Principal Advisor, one Senior Advisor, and two "Advisor IIs". *Id.* ¶11. Temple characterized the remaining advisors as "Advisor I."

In October 2010, prior to restructuring, Campbell emailed Ruff and five other CST employees describing the restructuring plan and soliciting their input on their expected roles within the new department structure. *Id.* ¶13. Campbell included Neal Conley ("Conley"), then the Coordinator of Recruitment and Retention and not an "Advisor," on the email. *Id.* ¶14. Ruff disagreed with permitting Conley to apply for the new roles because Conley was not an academic advisor. Campbell disagreed because Conley's position required advising duties. *Id.*

---

[1] The Court's Policies require a Statement of Undisputed Material Facts ("SOF") and Appendix ("App.") filed in support of a summary judgment motion.

¶18, 21. Ruff also told Campbell he disagreed with the restructuring process and opted not to attend a CST team meeting discussing the restructuring process. *Id.* ¶20. At the same time, Campbell and Luehrmann examined considerations for an ideal structure for the Academic Advising department and considered the best position for each of the six invited employees. *Id.* ¶15.

Overcoming his objection, Ruff applied for the Principal Advisor and Senior Advisor positions. *Id.* ¶26. Only Ruff and Conley applied for the Principal Advisor position[2], while Ruff and four Caucasian females applied for the Senior Advisor position. *Id.* ¶27, 28. At oral argument, counsel agreed the four Caucasian females also applied for the Advisor II position but Ruff did not. Campbell and Luehrmann conducted all interviews for the new positions and, after communications with Temple's Human Resources department, ultimately made the hiring decisions for the newly created positions. *Id.* ¶23. Campbell and Luehrmann weighed several factors including: (1) employee performance in previous advising roles at Temple; (2) overall experience in advising; (3) relevant leadership experience; (4) interview performance; (5) performance development evaluations; (6) and general considerations of impact on the team and team environment. *Id.* ¶24.

Luehrmann and Campbell recommended Conley for the Principal Advisor position and Jennifer Van DeWoestyne ("Van DeWoestyne") for the Senior Advisor position. Luehrmann and Campbell looked at each person's experience, quality of their work, and past work in leadership opportunities and decided each of the positions. App. 199a. They found "others were better qualified for the things [Ruff] applied for, he was ending up with default position,

---

[2] Luehrmann and Campbell also invited David Johnson, also an African-American, to apply for a new position in the restructuring but he left Temple's employment to join his mother "doing something quite interesting." App. 200a.

which was Advisor I, and we thought that was too low." *Id.* As such, Luehrmann and Campbell asked Temple's Human Resources department to reopen the Advisor II position and it agreed to do so. *Id.* Luehrmann and Campbell offered the Advisor II promotion to Ruff but he declined because, as his counsel admitted during oral argument, he did not know Temple offered the senior jobs to others and he did not want to affect his opportunity for the Principal or Senior Advisor positions.

Sometime later, Ruff learned of Luehrmann's and Campbell's decision but still did not request the Advisor II position. Instead, Ruff's union representative filed a grievance contesting Ruff's non-selection claiming Van DeWoestyne's selection violated Temple's collective bargaining agreement. Temple denied the grievance and the matter proceeded to arbitration. After a hearing, the arbitrator upheld Temple's denial. SOF ¶58. In December 2013, a new Temple supervisor promoted Ruff to an Advisor II position which he could have attained in 2010 and he remains employed by Temple through this case. *Id.* ¶61.

## II. Analysis

Ruff sued Temple for unlawfully discriminating against him on the basis of race when it failed to promote him to the Principal Advisor or Senior Advisor position. Ruff seeks damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, 42 U.S.C. §1981 and related claims under the Pennsylvania Human Resources Act ("PHRA"). Temple moves for summary judgment claiming there are no materially disputed facts, and as a matter of law, Ruff cannot show Temple's failure to select him was a pretext for race discrimination.[3]

---

[3] We must grant Temple's motion for summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

We apply the three step burden shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) in employment discrimination cases alleging failure to promote.[4] Ruff is first required to show sufficient evidence to establish a *prima facie* case: (1) he is a member of a protected class; (2) he was qualified for the position he sought to attain; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of discrimination. *Jones v. Temple University*, No. 12-5349, 2014 WL 3389109, *7 (E.D. Pa. 2014).

The parties agree Ruff meets the elements of a *prima facie* case. The *McDonnell Douglas* burden then requires Temple articulate "a legitimate, nondiscriminatory reason for the employment action." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). This burden is rather light. *Id.*

Once Temple articulates reasons for not promoting Ruff, the burden shifts back to Ruff to rebut Temple's legitimate reasons with evidence to "allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes*, 32 F.3d at 764 (internal citations omitted).

---

Fed.R.Civ.P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We consider "the facts and draw all reasonable inferences in the light most favorable to the plaintiff, the party who opposed summary judgment." *Lamont v. New Jersey*, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)). Ruff may not rest upon mere allegations or denials contained in his pleadings. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Rather, Ruff must offer specific evidence to contradict Temple's evidence, and show relevant factual disputes remain, to be resolved at trial. If Ruff does not respond with specific evidence, the court, when appropriate, shall grant summary judgment. Fed.R.Civ.P. 56(e).

[4] This same standard is applied in claims arising under Title VII, §1981, or the PHRA. *Jones v. School Dist. of Phila.*, 198 F.3d 403 (3d Cir. 1999).

> To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of evidence.

*Fuentes*, 32 F.3d at 765. Importantly, "[t]he question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (quoting *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 159 (7th Cir.1996)).

### 1. *Temple's stated reasons for Ruff's non-selection*

"Unless there is evidence of discrimination, the court is neither permitted to get involved in the subjective business decision of the employer, nor set its own employment standards for the employer." *Jones v. Temple University*, *supra,* at *8, citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 527 (3d Cir. 1992). Temple's proffered reason for selecting Conley and Van DeWoestyne over Ruff is their performance and superior skills as assessed in the selection process.

Luehrmann and Campbell testified Ruff did not perform well in the interviews, and his goals seemed "divergent from Temple's goals." SOF ¶¶35, 36. In contrast, Temple's Luehrmann and Campbell found Van DeWoestyne to be very prepared, detail-oriented and possessing better communication skills and quality of work. *Id.* ¶37. Based on these assessments, Temple selected Van DeWoestyne for the Senior Advisor position. *Id.* ¶38. Similarly, Conley had experience in advising and related activities, performed well during his interview and as Ruff

admits, had more "job knowledge" than him. *Id.* ¶47. Ruff admits he went to Conley for advice and respected his experience. *Id.* ¶46.

After reviewing Temple's evidence, we find its reasons for selecting Conley and Van DeWoestyne over Ruff for the Principal and Senior Advisor positions are legitimate, shifting the burden to Ruff to show pretext.

***2. Ruff's evidence demonstrating weakness, implausibility, inconsistency, incoherency or contradictions in Temple's proffered reasons***

Ruff must now "point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes,* 32 F.3d at 764. Ruff must present evidence contradicting core facts advanced by Temple as the legitimate reason for its decision.

***a. Ruff's "qualified" comparison with other candidates***

Ruff first offers his subjective opinion he had more experience and qualifications than Van DeWoestyne and Conley and Temple impermissibly relied on subjective evaluations by Campbell and Luehrmann. *See* ECF Doc. No. 39-1 at A-2(a)-(e). Ruff claims he had more experience than Conley, although he offers no objective evidence. To the contrary, Ruff admits Conley "had more job knowledge" than he, and he "respected his [Conley's] experience." *Id.* ¶¶46, 47. Ruff's subjective comparison of qualifications does not cast sufficient doubt on Temple's stated legitimate reasons for its selection. *Luta v. State of Delaware, Dept. of HSS*, 847 F. Supp. 2d 683, 691 (D.Del. 2012) citing *Bennun v. Rutgers State University,* 941 F.2d 154, 170 (3rd Cir.1991) ("This Court has held that 'more than a denial of promotion as a result of a dispute over qualifications' must be shown to prove pretext.")

Ruff also contends he had more seniority than Van DeWoestyne because he worked at Temple for two years as opposed to Van DeWoestyne's six months. There is no evidence Temple considered seniority relevant in this promotion process, and, comparing months of experience fails to cast sufficient doubt on Temple's otherwise legitimate reasons for selecting Van DeWoestyne over Ruff. *Johnson v. Gober*, 83 F. App'x 455, 458-59 (3d Cir. 2003).

Ruff's subjective opinion on comparative qualifications fails to discredit Temple's stated reasons for selecting Conley and Van DeWoestyne for these two positions.

***b. Alleged discriminatory animus by one of two decision makers.***

Ruff claims Campbell possesses discriminatory animus based on selective excerpts from Campbell's March 2010 school paper in his doctorate program. We reviewed the proffered excerpt in its full context and Campbell's testimony, and do not find his self-evaluative comments in a school paper can be construed as evidence of discriminatory animus toward Ruff. Notably, Campbell was *one of at least two* decision makers selecting candidates for the new advisor positions. Even if the suggested inference were reasonable, Ruff still fails to offer evidence suggesting Campbell persuaded Luehrmann and Temple Human Resources' personnel Karen Brinkley and Human Resources Assistant Director Barbara Lopez to agree to his biased decision-making. Further, the cited excerpt in full context suggests Campbell aspires to avoid and overcome a bias for those who are white males like himself.

We are also persuaded by the syllogism in Ruff's 2008 hiring. Temple's Luehrmann and Campbell initially hired Ruff as an Advisor. After generally good reviews, Ruff now claims the same Luehrmann and Campbell are responsible for the adverse action, although they voluntarily sought Temple's approval to re-open the Advisor II position and offered this promotion to Ruff. He declined this promotion. Rather than evidencing bias against him, Temple's decisions reflect

an evaluation of Ruff compared to other candidates including a view Ruff may be best qualified, at the operative moment, to serve as an Advisor II. Where the two same decision makers hire and then allegedly discriminate by not promoting Ruff after generally good reviews, and absent any particularized animus other than a school paper explained in context, we find Ruff has not met his burden of pretext. *Kotakis v. Wesco Distribution, Inc.*, 650 F.Supp.2d 435, 442 (W.D. Pa. 2009) (citing *Bintliff-Ritchie v. Am Reins. Co.*, No. 05-3802, 2007 WL 556895, at *11 (D.N.J. 2007) (where same decision makers hire and take adverse action against plaintiff, this counters against inference of discrimination)). Ruff's only argument is speculative and does not point to any evidence Temple's two officials acted with any discriminatory animus.

***c. Luehrmann's inability to recall Ruff's specific mistakes.***

Ruff seeks to use a lapse in memory to discredit Luehrmann's opinion Van DeWoestyne is the more qualified candidate because Ruff made mistakes in the past. In deposition, Luehrmann could not recall Ruff's specific mistakes. (ECF Doc. No. 39-1, p.10). We do not find lack of memory to be sufficient evidence to render Temple's reasons for selecting Van DeWoestyne over Ruff implausible or otherwise unworthy of belief. While Ruff received "satisfactory" in his skills, Luehrmann and Campbell found Van DeWoestyne to be outstanding. Luehrmann also recalled Ruff identified a personal long term goal to be at a charter school. App. 199a. We are persuaded by Ruff's admission he "receive[d] some negative feedback during his employment at Temple related to advising mistakes." SOF ¶4. This admission lends sufficient credence to Luehrmann's testimony.

We are mindful of our obligation to not substitute our judgment for the employer's. *See e.g. Keller, supra.*

***d. Alleged non-compliance with affirmative action plan.***

Ruff claims Temple disregarded its policies on affirmative action although he offers no objective supporting evidence.[5] Title VII "does not demand that an employer give preferential treatment to minorities or women" and "was not intended to 'diminish traditional management prerogatives." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 259 (quoting *Steelworkers v. Weber*, 443 U.S. 193, 207 (1979)). Title VII also does not "require the employer to restructure his employment practices to maximize the number of minorities and women hired." *Id.* The "employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Id.* It would be improper for the jury to "sit as a super-personnel department that examines an entity's business decisions." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir. 1995).

## III. Conclusion

To survive summary judgment, Ruff must adduce sufficient evidence rebutting Temple's proffered legitimate reasons, from which the trier of fact can reasonably infer "that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 147 (2000). Our task is to assess whether Temple's reasons are a pretext for discrimination. After examining the parties' evidence, we find Ruff failed to provide evidence from which the jury could reasonably disbelieve Temple's proffered reasons for selecting other candidates. To create a triable issue, Ruff must show more than his subjective view of his qualifications against two other candidates and his subjective interpretation of one interviewers' school paper. His claim is based on a view he knows what is better for Temple than Temple

5 The other four women candidates for the Senior Advisor position are also members of a protected class and would arguably face Campbell's alleged bias in favor of white males.

does. Based on the undisputed material facts, including Temple's decision to simultaneously offer him a promotion to Advisor II (a position he accepted in 2013) over qualified female candidates, we find no triable issue concerning whether Temple dissembled "to cover up a discriminatory purpose". *Id.* Although Ruff "may disagree with the wisdom, fairness, or correctness of [Temple's] actions . . . disagreement, without more, does not rebut [Temple's] legitimate non-discriminatory reasons for its actions." *Gardner-Lozada*, *supra*, quoting *Igwe v. E.I DuPont De Nemours & Co.*, 180 F.App'x 353, 356 (3d Cir. 2006). Our accompanying Order grants Temple's motion for summary judgment.[6]

[6] Ruff's additional claims Temple disregarded its collective bargaining agreement or affirmative action policies may sound in breach of contract but not the plead discrimination claims.